**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MAXUS LEASING GROUP, INC.,**

                  **Plaintiff,**

                  v.                                      5:04-CV-518
                                                            (FJS/DEP)

**KOBELCO AMERICA, INC.; KOBELCO**
**CONSTRUCTION MACHINERY**
**AMERICA LLC; BROWNELL STEEL INC.;**
**ALLAN J. BENTKOFSKY, Chapter 7 Trustee**
**for Syracuse Equipment Leasing Co., Inc.;**
**WELLS FARGO EQUIPMENT FINANCE, INC.; and**
**SYRACUSE EQUIPMENT LEASING CO., INC.,**

                  **Defendants.**
_____

**APPEARANCES**                                      **OF COUNSEL**

**GREEN & SEIFTER, ATTORNEYS,**        **ROBERT K. WEILER, ESQ.**
**PLLC**                                           **KIMBERLY M. ZIMMER, ESQ.**
900 One Lincoln Center
Syracuse, New York 13202
Attorneys for Plaintiff

**BLEAKLEY PLATT & SCHMIDT, LLP**        **THOMAS G. BAILEY, JR., ESQ.**
One North Lexington Avenue
P.O. Box 5056
White Plains, New York 10602-5056
Attorneys for Defendants Kobelco America,
Inc. and Kobelco Construction Machinery
America LLC

**HISCOCK & BARCLAY LLP**                **J. ERIC CHARLTON, ESQ.**
One Park Place                                      **JOHN P. LANGAN, ESQ.**
300 South State Street
P.O. Box 4878
Syracuse, New York 13221-4878
Attorneys for Defendants Kobelco America,
Inc. and Kobelco Construction Machinery
America LLC

**WHITEMAN OSTERMAN & HANNA LLP**
One Commerce Plaza
Suite 1900
Albany, New York 12260
Attorneys for Defendants Brownell Steel, Inc.; Wells Fargo Equipment Finance, Inc.; and Syracuse Equipment Leasing Co.

**JOHN J. HENRY, ESQ.**

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On May 10, 2004, Plaintiff Maxus Leasing Group, Inc. ("Maxus") filed its complaint alleging seven causes of action: (1) conversion against Defendant Wells Fargo Equipment Finance, Inc. ("Wells Fargo"); (2) recovery of chattel against Defendants Wells Fargo and Brownell Steel, Inc. ("Brownell"); (3) breach of warranty of title against Defendants Kobelco America, Inc. and Kobelco Construction Machinery America LLC (collectively referred to as "Kobelco"); (4) fraud against Defendant Kobelco; (5) conspiracy against Defendant Kobelco; (6) unjust enrichment against Defendant Kobelco; and (7) conversion against Defendant Kobelco.

Currently before the Court are Defendants Wells Fargo and Brownell's motion for summary judgment, Defendant Kobelco's motion for summary judgment, and Plaintiff Maxus' cross-motion for summary judgment as to all claims.

## II. BACKGROUND

The present dispute arises from a series of transactions involving two Kobelco cranes. In October 2000, Defendant Kobelco sold and delivered two Model CK 1000 crawler cranes to Defendant Syracuse Equipment Leasing Co., Inc. ("SELC") for $588,920.18 per crane.[1,2]

On approximately May 10, 2001, Defendant Kobelco, claiming difficulty collecting payments from SELC, entered into another transaction regarding the same cranes. In this transaction, Plaintiff Maxus remitted $715,000 per crane to Defendant Kobelco. Defendant Kobelco applied Plaintiff Maxus' $1,430,000 payment to Defendant SELC's account, crediting entries for the two cranes and another piece of equipment.

By late 2001 and early 2002, Defendant SELC's financial situation was deteriorating, and it defaulted on all of its obligations concerning the two cranes. Defendant SELC filed for bankruptcy on April 22, 2002.[3]

The nature of the transaction entered into between Defendant Kobelco and Plaintiff Maxus in May 2001 is the crux of this dispute. Plaintiff Maxus claims that it did not have knowledge of Defendant Kobelco's prior sale of the cranes to Defendant SELC and that it intended to purchase the cranes new from Defendant Kobelco in order that they could then lease them to Defendant SELC.

---

[1] The cranes had serial numbers GD0201061 ("61 crane") and GD0201063 ("63 crane").

[2] It is unclear how much Defendant SELC actually paid Defendant Kobelco on the cranes. An internal Kobelco memorandum suggests that nothing was paid on these cranes. *See* Affidavit of Kimberly M. Zimmer, sworn to Oct. 18, 2005, at Exhibit "K."

[3] Although SELC and its Chapter 7 Trustee are named Defendants, Plaintiff Maxus seeks no recovery from either.

Defendant Kobelco sees the May 2001 transaction differently. Defendant Kobelco claims that it told Plaintiff Maxus that it had already sold the cranes to Defendant SELC and that Plaintiff Maxus, as a result of some business arrangement with Defendant SELC, had agreed to re-finance the cranes for Defendant SELC.

### III. DISCUSSION

**A.     Summary judgment standard**

A district court will grant summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the pleadings, affidavits, depositions, and admissions on file, the court must "'resolve all ambiguities and draw all inferences in favor of the non-moving party.'" *Chan v. Gantner*, 464 F.3d 289, 292 (2d Cir. 2006) (quotation omitted).

**B.     Standing**

As an initial matter, with respect to Plaintiff Maxus' claims for conversion and recovery of chattel (Causes of Action 1 and 2), Defendants Kobelco, Wells Fargo, and Brownell contend that Plaintiff Maxus lacks standing to bring this action.

To complete the May 2001 transaction with Defendant Kobelco, Plaintiff Maxus needed to obtain financing from third parties. Therefore, Plaintiff Maxus obtained a "bridge loan" from First Merit Bank for $715,000 and assigned its security interest in the 61 crane as collateral. That

crane was later reassigned to Plaintiff Maxus in March 2002.[4]

Under New York law, assignment of a security interest passes all rights and interests to the assignee, including the right to seek delinquent payments or recover collateral. *See Rockland Lease Funding Corp., Inc. v. Waste Mgmt. of N.Y., Inc.*, 245 A.D.2d 779, 779 (3d Dep't 1997) (citations omitted). A complete assignment, without qualification, cuts off the assignor's rights. *See In re Stralem*, 303 A.D.2d 120, 122-23 (2d Dep't 2003) (quotation and other citations omitted). Therefore, the assignor is no longer a real party in interest and lacks standing. *See James McKinney & Son, Inc. v. Lake Placid 1980 Olympic Games, Inc.*, 61 N.Y.2d 836, 838 (1984). However, a reassignment back to the assignor restores standing. *Cf. Walsh v. Woarms*, 109 A.D. 166, 168 (2d Dep't 1905).

Since the 61 crane was reassigned to Plaintiff Maxus in March 2002, the Court concludes that Maxus is a real party in interest with standing as to that crane.[5]

---

[4] *See* Affidavit of Anthony Granata, sworn to Oct. 17, 2005, at ¶ 4.

[5] Defendant Kobelco also contends that Plaintiff Maxus suffered no injury concerning the 63 crane and, therefore, lacks standing to pursue its causes of action concerning that crane.

Following Defendant SELC's default, Plaintiff Maxus recovered the 63 crane and leased it to third parties, receiving approximately $140,000 in payments; and, on March 22, 2005, Plaintiff Maxus sold the 63 crane for $323,000.

However, as the facts are currently presented, the Court cannot conclude that Plaintiff Maxus suffered no actual or threatened injury concerning the 63 crane. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (quotation omitted). Although the situation is unclear, it appears likely that Plaintiff Maxus suffered a loss of control over the crane and incurred costs in recovering and selling the crane. In addition, Plaintiff Maxus did not recover the full May 2001 "purchase price" of $715,000 for the crane because the subsequent lease and sale transactions netted only $463,000. Therefore, at this time, the Court rejects Defendant Kobelco's contention that Plaintiff Maxus
(continued...)

**C.     Plaintiff Maxus' conversion claim against Defendant Wells Fargo and recovery of chattel claim against Defendants Wells Fargo and Brownell**

Plaintiff Maxus argues that, because it had a superior security interest in the 61 crane, Defendant Wells Fargo wrongfully repossessed the crane and sold it to Defendant Brownell.

In the time between the two transactions at issue in this case, Defendant SELC obtained a $2,540,000 loan from Defendant Wells Fargo on November 22, 2000. As collateral, Defendant SELC pledged the 61 crane and other equipment. Therefore, on November 22, 2000, Defendant Wells Fargo filed a UCC-1 financing statement attempting to designate the crane and other items as collateral. However, Defendant Wells Fargo omitted a zero in its filing, so that the serial number for the 61 crane incorrectly read GD02-0161 rather than the correct serial number GD0201061.

Following the May 2001 transaction between Plaintiff Maxus and Defendant Kobelco, and without conducting a UCC search, Plaintiff Maxus also attempted to create a security interest in the 61 crane. On May 29, 2001, Plaintiff Maxus filed a UCC-1 financing statement listing the 61 and 63 cranes along with their correct serial numbers.

As noted above, Defendant SELC defaulted on all obligations regarding the cranes including its loan obligations to Defendant Wells Fargo and its lease obligations to Plaintiff Maxus. In March 2002, Defendant Wells Fargo repossessed the 61 crane and sold it to Defendant Brownell for $480,000 net.

In order to be valid as a properly recorded security interest, a UCC financing statement

---

[5](...continued)
suffered no injury concerning the 63 crane.

must provide a description of the collateral that "reasonably identifies what is described." N.Y. U.C.C. §§ 9-504, 9-108. Collateral is reasonably identified if its identity is "objectively determinable." N.Y. U.C.C. § 9-108(b)(6). Even with minor errors, a financing statement is effective unless the errors make it "seriously misleading." N.Y. U.C.C. § 9-506(a) and cmt. 2; *see also In re The Bennett Funding Group*, 255 B.R. 616, 636 (N.D.N.Y. 2000) (holding that a financing statement's description must allow distinction between the collateral and other, similar goods that the debtor owns) (quotation omitted); *John Deere Co. of Baltimore, Inc. v. William C. Pahl Constr. Co., Inc.*, 34 A.D.2d 85, 88 (4th Dep't 1970) (holding that a UCC filing is meant to provide mere inquiry notice to serve as starting point for further investigation).

The weight of authority supports the validity of a financing statement with a "one digit" error.[6] *See* N.Y. U.C.C. § 9-108 cmt. 2 (rejecting a serial number test); *In re Sarex Corp.*, 509 F.2d 689, 691 (2d Cir. 1975) (same); *In re Esquire Produce Co.*, No. 66-B-1052, 1968 WL 9183 (Bankr. E.D.N.Y. Feb. 27, 1968) (finding a one digit typographical error "harmless"); *Marine Midland Bank, N.A. v. Smith Boys, Inc.*, 129 Misc. 2d 37, 40 (N.Y. Sup. Ct. 1985) (rejecting a serial number test) (citations omitted).

Here, Defendant Wells Fargo filed a UCC financing statement on November 22, 2000, describing the collateral as "One (1) New 2000 Kobelco Crane, Model CK 1000, s/n GD02-0161" and including an extensive list of the crane's attachments. *See* Affidavit of John J. Henry,

---

[6] White & Summers include an analogous example in their treatise, stating that a description of a "1998 Mack Truck with serial number AB7777" would be adequate even if the serial number actually read "AB7888" because it is objectively determinable that the debtor owned only one such truck and the parties intended to create a security interest therein. 4 *White & Summers* UCC § 3103(b) (5th ed. 2006) (citations omitted).

sworn to Sept. 8, 2005, at Exhibit "Q." As stated, the actual serial number of the 61 crane was GD0201061.[7]

The completeness of the financing statement's description and the totality of the circumstances in this case lead the Court to conclude that the one-digit error was not seriously misleading. Defendant Wells Fargo's financing statement contained the proper debtor along with an accurate description of the year, make, and model of the crane. It also had an extensive list of attachments associated with the 61 crane. A UCC search would have provided inquiry notice regarding Defendant Wells Fargo's security interest in a new 2000 Kobelco Model CK 1000 crane owned by Defendant SELC with an extensive list of attachments and a very similar serial number. The Court finds that this information provided at least a starting point for further investigation and provided enough information to distinguish this collateral from other similar equipment.[8] Moreover, pursuant to N.Y. U.C.C. § 9-617(a) and (b), Defendant Wells Fargo's transfer of the 61 crane to Defendant Brownell precludes any claim of Plaintiff Maxus against Defendant Brownell.

---

[7] The Court notes that Plaintiff Maxus made similar serial number errors while renting the 63 crane following SELC's default.

[8] The cases that Plaintiff Maxus cites are readily distinguishable. In *John Deere Co., Inc. v. Richards*, the serial numbers used "[were] not even close," and the accompanying collateral description was inaccurate. 136 Misc. 2d 923, 924 (N.Y. Sup. Ct. 1987). Although *In re Aragon Indus., Inc.* states that parties who use serial numbers in multiple item transactions run the risk of subjecting their security interest to attack, that case "was not simply a question of the number being off a digit or being otherwise garbled;" rather, serial numbers were completely omitted. No. 73-263-BK-CF-Y, 1973 WL 21377 (Bankr. S.D. Fla. Nov. 21, 1973). Similarly, *In re The Bennett Funding Group* involved "comparatively extreme example[s]," some of which were "incomprehensible and provide[d] no way . . . to ascertain the identity" of the collateral. 255 B.R. at 636 n.16. Furthermore, the court explicitly limited its holding to use of the serial number test only when "there is no other way to identify a piece of collateral" and then as part of a multi-factor inquiry. *Id.* at 636-37.

Accordingly, the Court **GRANTS** Defendants Wells Fargo and Brownell's motion for summary judgment on Plaintiff Maxus' conversion and recovery of chattel claims relating to the 61 crane (Causes of Action 1 and 2); and the Court further **DENIES** Plaintiff Maxus' cross-motion for summary judgment on these claims.

## D.     Breach of warranty

Plaintiff Maxus asserts that Defendant Kobelco breached warranties of title pursuant to UCC § 2-312 by entering a contract for sale in May 2001 without having the cranes' titles free of security interests, liens, and encumbrances.

A contract for sale contains a warranty that "the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge." N.Y. U.C.C. § 2-312(1)(b). However, an exception exists in "circumstances which give the buyer reason to know that the person selling does not claim title in himself . . . ." N.Y. U.C.C. § 2-312(2). The official comments clarify that the exception applies to sales by sheriffs, executors, foreclosing lienors, and similarly situated persons, such that the character of the transaction is "immediately apparent" as being outside the ordinary commercial course. N.Y. U.C.C. § 2-312 cmt. 5.

Notwithstanding the parties' arguments about the exception's applicability, the threshold issue is whether a contract for sale was formed between the parties. Without a contract for sale, no warranty under § 2-312 could attach. This matter is disputed, and the parties offer widely

divergent factual allegations, supported by employee depositions.[9, 10]

Accordingly, the Court **DENIES** both Defendant Kobelco's motion and Plaintiff Maxus' cross-motion for summary judgment on Plaintiff Maxus' breach-of-warranty cause of action (Cause of Action 3).

**E.    Tort Claims**

*1. Fraud and Conversion*

It is a well-settled matter of New York law that a tort cause of action does not lie where it is duplicative of a claim sounding in contract: the plaintiff must assert that the defendant breached a duty independent of the claimed contract. *See, e.g., Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996) (citations omitted).[11]  Thus, the

---

[9] The following key facts are in dispute: (1) Plaintiff Maxus alleges that it received a list of equipment prior to the transaction with a cover sheet indicating that the cranes were new; (2) three former employees of Defendant Kobelco assert that they notified Plaintiff Maxus that the cranes had already been delivered to Defendant SELC; and (3) Defendant Kobelco claims that Maxus' employees directed it to "fix" invoices that showed a previous sale of the cranes to Defendant SELC by inserting Plaintiff Maxus' name as buyer for the purpose of enabling Maxus to obtain financing.

[10] Even if the contract's existence were not disputed, the applicability of the "reason to know" exception is a question of fact that cannot be decided on summary judgment. *See, e.g., Jones v. Linebaugh*, 34 Mich. App. 305, 310 (Mich. Ct. App. 1971) (citations omitted). The Second Circuit has stated that, in UCC matters, out-of-state precedents are "'more than mere persuasive authority.'" *In re Lou Levy & Sons Fashions, Inc.*, 988 F.2d 311, 316 n.5 (2d Cir. 1993) (quotation omitted).

[11] *See also Grappo v. Alitalia Linee Aeree Italiane*, 56 F.3d 427, 434 (2d Cir. 1995) (citations omitted); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987) (citations omitted); *Merzon v. Lefkowitz*, 289 A.D.2d 142, 143 (1st Dep't 2001) (citation

(continued...)

addition of a scienter allegation alone is generally insufficient to transform a contract cause of action into an actionable tort. *See Bibeau v. Ward*, 228 A.D.2d 943, 943-44 (3d Dep't 1996) (citation omitted). When "the identical contractual benefit of the bargain recovery is sought," the tort action is barred as duplicative. *Rockefeller Univ. v. Tishman Constr. Corp. of N.Y.*, 240 A.D.2d 341, 342 (1st Dep't 1997).

In this case, all allegations in the fraud, conversion, and breach-of-warranty causes of action are identical, except for an additional allegation of scienter. Moreover, Plaintiff Maxus seeks to recover the identical contractual benefit of the bargain or "purchase price" in each cause of action and alleges no independent facts to support tort liability.[12,13] Therefore, the Court finds that Plaintiff Maxus' fraud and conversion claims are duplicative of its breach-of-warranty claim.

Accordingly, the Court **GRANTS** Defendant Kobelco's motion for summary judgment on Plaintiff Maxus' fraud and conversion claims (Causes of Action 4 and 7).

---

[11](...continued)
omitted); *Interstate Adjusters, Inc. v. First Fidelity Bank, N.A.*, 251 A.D.2d 232, 234 (1st Dep't 1998) (quotation omitted); *Stella Flour & Feed Corp. v. Nat'l City Bank of N.Y.*, 285 A.D. 182, 187 (1st Dep't 1954) (citations omitted).

[12] Plaintiff Maxus' reliance on Rule 8(e) of the Federal Rules of Civil Procedure and *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994), for the proposition that it can plead alternative causes of action, is misplaced. These authorities address pleading potentially inconsistent causes of action, but precedent indicates that these tort causes of action cannot co-exist at all with a seemingly consistent contract claim based on identical allegations.

[13] Furthermore, the Court recognizes the inherent logic of the rule barring duplicative tort and contract actions. On one hand, if Plaintiff Maxus proves the existence of a contract, it will recover contract-based damages for any breach. On the other hand, if no contract of sale existed, Defendant Kobelco could not have defrauded Plaintiff Maxus because it did not attempt to sell already-sold cranes. Also, if no contract existed, Defendant Kobelco could not have committed conversion because Plaintiff Maxus had no superior right to the cranes.

### *2. Conspiracy*

There is no substantive tort of conspiracy in New York. *See Stuart v. Tomasino*, 148 A.D.2d 370, 372 (1st Dep't 1989) (citations omitted). An allegation of conspiracy is "permitted only to connect the actions of separate defendants with an otherwise actionable tort . . . ." *Id.* (citation omitted); *see also Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) (citations omitted). Therefore, conspiracy to commit fraud is not an independent cause of action. *See Alexander*, 68 N.Y.2d at 969 (quotation and other citations omitted); *MBF Clearing Corp. v. Shine*, 212 A.D.2d 478, 479 (1st Dep't 1995) (quotation and other citation omitted). Moreover, once the underlying fraud cause of action is dismissed, "the charge of conspiracy to effectuate [it] adds nothing and must also fall." *Block v. Chassin*, 36 A.D.2d 703, 703 (1st Dep't 1971) (citation omitted).

In this case, Plaintiff Maxus alleges that a conspiracy to defraud existed between Defendant Kobelco and Defendant SELC.[14] However, it asserts this cause of action against Defendant Kobelco only and does not use it to connect separate defendants to the alleged fraud. In addition, since the Court has already granted summary judgment on the fraud cause of action to Defendant Kobelco, the conspiracy claim "must also fall." *Id.*

Accordingly, the Court **GRANTS** Defendant Kobelco's motion for summary judgment on Plaintiff Maxus' conspiracy claim (Cause of Action 5).

---

[14] The Court notes that, because Plaintiff Maxus would be a party to any contract that might have existed, it is barred from asserting a cause of action for conspiracy to breach a contract. *See North Shore Bottling Co., Inc. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 179 (1968) (quotation and other citations omitted).

-12-

**F.     Unjust enrichment and money had and received**

Unjust enrichment is based on implied or quasi-contract.[15]  *See Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir. 1982) (citation omitted).  The plaintiff is required to "establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted).  A restitution remedy is available whether the defendant engaged in wrongdoing or merely obtained the plaintiff's money by mistake.  *See Citipostal, Inc. v. Unistar Leasing*, 283 A.D.2d 916, 919 (4th Dep't 2001) (citations omitted).

Since this form of relief is quasi-contractual, "[i]t applies in situations where no legal contract exists."  *Indyk*, 694 F.2d at 57.  Therefore, the existence of an enforceable contract generally precludes recovery on this theory.  *See Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537, 2003 WL 23018888, *17 (S.D.N.Y. Dec. 22, 2003) (quotation omitted).

In this case, due to the quasi-contractual nature of this cause of action, there is a threshold issue regarding the existence of a contract.  As noted above, this issue is disputed.  If a contract were formed between Plaintiff Maxus and Defendant Kobelco, then quasi-contractual relief would be precluded.  However, if no contract existed, a remedy may be afforded if the facts show that it would be unjust for Kobelco to keep the "purchase" money that Maxus remitted for the 61 crane.  *See Indyk*, 694 F.2d at 57 (quotation omitted).  Therefore, the Court cannot rule at this time as a matter of law, but must await a jury's determination as to whether there is a contract

---

[15] The causes of action for unjust enrichment and money had and received are identical. *See In re Estate of Witbeck*, 245 A.D.2d 848, 850 (3d Dep't 1997).

cause of action.

Accordingly, the Court **DENIES** both Defendant Kobelco's motion and Plaintiff Maxus' cross-motion for summary judgment on Plaintiff Maxus' unjust enrichment and money had and received claim (Cause of Action 6).

### IV. CONCLUSION

Accordingly, after reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants Wells Fargo and Brownell's motion for summary judgment is **GRANTED** and Plaintiff Maxus' cross-motion for summary judgment is **DENIED** on Plaintiff Maxus' conversion and recovery-of-chattel claims concerning the 61 crane **(Causes of Action 1 and 2)**; and the Court further

**ORDERS** that Defendant Kobelco's motion for summary judgment is **GRANTED** and Plaintiff Maxus' cross-motion for summary judgment is **DENIED** on Plaintiff Maxus' fraud, conspiracy, and conversion claims **(Causes of Action 4, 5, and 7)**; and the Court further

**ORDERS** that both Defendant Kobelco's motion and Plaintiff Maxus' cross-motion for summary judgment are **DENIED** on Plaintiff Maxus' breach-of-warranty and unjust enrichment claims **(Causes of Action 3 and 6)**;[16] and the Court further

---

[16] Accordingly, two matters remain for trial: (1) Plaintiff Maxus' breach of warranty of title claim against Defendant Kobelco **(Cause of Action 3)**; and (2) Plaintiff Maxus' unjust enrichment and money had and received claim against Defendant Kobelco **(Cause of Action 6)**.

**ORDERS** that Plaintiff Maxus' counsel is to initiate a telephone conference with the Court and opposing counsel for the one remaining Defendant, Defendant Kobelco, using a professional conferencing service on March 6, 2007 at 9:45a.m. to set a trial date for this action.

**IT IS SO ORDERED.**

Dated: February 26, 2007
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge